FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

2015 OCT -9  AM 8: 58

CLERK-LAS CRUCES

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| OF THE UNITED STATES OF AMERICA ) | |
| FOR AUTHORIZATION TO OBTAIN ) | |
| LOCATION DATA CONCERNING: ) | |
| ) | Misc. No. 15-628 MR |
| CELLULAR TELEPHONE NUMBER ) | |
| 505-206-4787, HEREIN REFERRED ) | |
| TO AS THE TARGET TELEPHONE ) | **UNDER SEAL** |
| ) | |

**APPLICATION FOR ORDER TO OBTAIN LOCATION DATA
OF A CELLULAR TELEPHONE PURSUANT TO FEDERAL RULE OF CRIMINAL
PROCEDURE RULE 41 AND 18 U.S.C. § 2703(c)(1)(A)**

Shea Shurley, a Special Agent with the Drug Enforcement Administration (DEA), being

duly sworn, deposes and states:

**INTRODUCTION**

I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal

Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and

duly authorized by the Attorney General to request a search warrant.   I have been a DEA Special

Agent since March 2010.   Prior to becoming a DEA Special Agent, I was a United States Border

Patrol agent for 12 years and was stationed in south Texas.   During my career, I have conducted

hundreds of criminal investigations concerning violations of the Controlled Substances Act, and

have received ongoing training in conducting such investigations.

My experience as a narcotics agent includes, but is not limited to: conducting physical

surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working

1

with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from the use of pen registers, and trap and traces.

Through my training, education, and experience, I have become familiar with the manner in which drug trafficking organizations operate, and know that cellular telephone location data can be useful in locating members of an organization when other investigative methods have failed. By locating members of an organization, particularly at times when they are engaged in illegal activity, agents are able to further their investigation and gather additional evidence of drug trafficking crimes.

I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of the DEA and the Federal Bureau of Investigation (FBI) to ascertain the physical location of the **TARGET TELEPHONE**, including but not limited to E-911 Phase II data (or other precise location information) concerning the **TARGET TELEPHONE** (the Requested Information"),[1] for a period of 45 days:

The **TARGET TELEPHONE** is a cellular telephone assigned telephone number 505-206-4787.   Based on information derived from the investigation referenced below, I believe that the **TARGET TELEPHONE** is in the possession of, or under the dominion and control of Mauricio Ledezma, aka "Conejo," who is using it to facilitate drug trafficking and money

---

[1]   Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the **TARGET TELEPHONE** at the start and end of any call.   In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause.   *See In re Application*, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

laundering crimes.

I have personally participated in the investigation set forth below.   I am familiar with the facts and circumstances of the investigation through my personal participation and discussions with other law enforcement officers.   Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.   Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation.   Facts not set forth herein are not being relied on in reaching my conclusion that the requested order should be issued.   Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

Probable cause exists to believe that the Requested Information will allow agents to locate Mauricio Ledezma, the user of the TARGET TELEPHONE, who is subject to arrest based on drug trafficking and money laundering violations in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 1956 (the TARGET OFFENSES).

For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed by Mauricio Ledezma and others.   Further, there is probable cause to believe that the **TARGET TELEPHONE** has been used to commit the TARGET OFFENSES.   I believe that Ledezma is currently utilizing the **TARGET TELEPHONE** within the District of New Mexico.

**FACTS**

The DEA Las Cruces Resident Office (LCRO) and the Federal Bureau of Investigation (FBI) are currently investigating the drug trafficking activities of a Drug Trafficking Organization (DTO) operating out of Chihuahua, Mexico, which is responsible for sending the marijuana, cocaine, and methamphetamine from Mexico into the United States.   Beginning on January 12, 2015, pursuant to an Order signed by the Honorable Robert C. Brack, District of New Mexico, agents began intercepting electronic communications (Blackberry messages, which are similar to text messages) to and from a Blackberry device used by Ignacio Villalobos a/k/a "Nachito" a/k/a "Apa" (Villalobos).   To date, the intercepted messages have revealed that Villalobos and his co-conspirators are sending large amounts of narcotics from Mexico into the United States and then arranging to have the money owed for the narcotics transported back to them in Mexico. Intercepted communications show that some of the narcotics are being delivered to Albuquerque, New Mexico.

On January 20, 2015, the following exchange of messages took place between Villalobos and an individual believed to be Edgar Estopellan[1]:

> Villalobos:          And the ones belonging to Kuentos we left 100 in the duke and 50 for okla and God willing they'll go through.
>
> E. Estopellan:       Affirmative it's bad ass.

Based on my training and experience, I believe that, in the above exchange, Villalobos was telling A. Estopellan that the drug trafficking organization had left 100 pounds of marijuana in

---

[1] The electronic communications quoted in this Affidavit were originally in the Spanish language.   They have been translated by bilingual personnel working with DEA and/or FBI, and punctuation marks have been added to make the exchanged messages easier to understand.   The exchanges of messages back and forth are not necessarily quoted in their entirety in this Affidavit.   Rather, only the most pertinent parts have been included here.

Albuquerque, NM, for an unknown person whom they refer to as "Kuentos" and that they were sending another 50 pounds of marijuana to Oklahoma.

On January 21, 2015, Villalobos sent Rene Amaya a Blackberry message that said "Buddy tomorrow for sure send Conejito."   A little over one hour later, Sombra replied with a message that said "Conejito says that yes, Apa, tomorrow he'll take off to duke."   Several hours later, Villalobos and Amaya had the following exchange of messages:

| | |
|---|---|
| Amaya: | Apa, Conejito tells me that if you can give him for the expenses so he can depart early tomorrow to duke, tell me. |
| Villalobos: | Let me see if I have some there, if not I'll give him some over there at the duke. |
| Villalobos: | Understood, he says that just for the gas, Apa, so he can depart to duke tomorrow. |
| Villalobos: | Ok if not tell him to find it himself and I'll pay him back over there. |
| Amaya: | Understood Apa. |

Based on my training and experience, in the above exchange of messages, I believe that Villalobos was instructing Amaya to send a person who uses the nickname "Conejo" (later identified as Mauricio Ledezma) to Albuquerque, NM, the following day to pick up the 50 pounds of marijuana that had been left in Albuquerque and transport it to Oklahoma (and possibly to pick up drug proceeds).   I believe that Amaya was indicating that Ledezma was willing to go to Albuquerque but that Ledezma was asking if Villalobos could provide him with expense money for the trip.

Over the following two days, January 22-23, 2015, Villalobos and Amaya exchanged a series of messages, during which the following ensued:

| | |
|---|---|
| Amaya: | Apa, Conejo is asking if he should take off to duke. |

| | |
|---|---|
| Villalobos: | Affirmative. |
| Amaya: | Understood Apa. |
| Amaya: | Good morning. |
| Villalobos: | Did Conejillo leave already? |
| Amaya: | Affirmative Apa he's in route already. |
| Villalobos: | Understood send me the number when he gets there. |
| Amaya: | Understood Apa I'll send it to you right away. |

Based on my training and experience, I believe that, in the above exchange, Amaya was asking

Villalobos if Ledezma should go ahead and leave for Albuquerque, NM, to pick up the 50 pounds

of marijuana which had been left in Albuquerque and needed to be transported to Oklahoma.   I

believe that Villalobos was indicating that Ledezma should go ahead and leave for Albuquerque

and that Sombra should send Ledezma's phone number to Villalobos.

Approximately three hours later, Ledezma sent a message to Villalobos which said

"5052064787 Apa."   Very shortly thereafter, Villalobos exchanged a series of messages with

Jesus Munoz-Lechuga ("Lechuga"), during which the following ensued:

| | |
|---|---|
| Villalobos: | 5052064787 conejo. |
| Villalobos: | So you could give him the 50 and 750 for expenses. |
| Lechuga: | I just give them to him right. |

Based on my training and experience, I believe that Amaya was giving Ledezma's phone number

to Villalobos and that Villalobos in turn gave the phone number to Munoz so that Munoz could

contact Ledezma and arrange to provide Ledezma with the 50 pounds of marijuana which

Ledezma was to deliver to Oklahoma and also provide Ledezma with $750 for expense money for

the trip.

On January 25, 2015, agents intercepted Blackberry messages between Amaya and Villalobos.   Villalobos sent Amaya Blackberry messages stating, "and conejo where is he?" Amaya responded, "yes he has a 29...he's on his way over here, apa, conejo was in Duke, his vehicle broke down but it won't be long for him to get here...Conejo is in Deming, apa...Conejo says that he's on his way to my house, apa."   Villalobos replied, "Pay him what it is and then give the rest to Trofeo."   Amaya responded, "Understood apa.   Also, the 500 of Maury?"   Villalobos replied, "Yes buddy you might as well...and 500 yours."   Amaya responded, "Understood, apa. Thank you, Maury is here too apa."   Based on my training and experience, I believe Villalobos was asking Amaya for Ledezma's whereabouts and Amaya told Villalobos that Ledezma was returning with the drug proceeds ("29") from the marijuana Ledezma took to Oklahoma.   I also believe Ledezma traveled to Mexico to take the money earned from the Oklahoma trip to Amaya's house and Amaya informed Villalobos of the plan.   I believe Amaya told Villalobos that Ledezma was in Albuquerque ("Duke") and was delayed due to car trouble.   I also believe, from this conversation, Ledezma arrived in Mexico where Amaya was and Villalobos instructed Amaya how to pay Ledezma and "Maury" and Amaya and then to give the rest of the money to "Trofeo."

Through further investigation, agents learned Mauricio Ledezma crossed from Palomas, Chihuahua, Mexico into Columbus, NM three times on January 25, 2015, at 12:15 a.m., 11:34 a.m., and at 5:34 p.m.   The first time he entered alone driving a Pontiac G6.   The second time he entered in the same Pontiac with Mark Temple.   The third crossing was in a green, Chevrolet pickup with Mark Temple.

Beginning on February 9, 2015 and pursuant to an Order signed by the Honorable

Stephan M. Vidmar, District of New Mexico, agents began receiving GPS location services for the **TARGET TELEPONE** and agents learned that the phone was located in Albuquerque, NM. GPS location services were accurate enough to identify a residential address at 1400 Rolling Rock, Albuquerque, NM.   On February 11, 2015, agents observed a vehicle at the Rolling Rock address with license plates registered to Mauricio or Mari Ledezma at the 10th Avenue address, which is the same name and address used in the subscriber information for "Conejo's" phone.   On February 12, 2015, at the Rolling Rock address, agents observed a green, Chevrolet truck in the driveway.   It is the same truck Ledezma was seen in the photos taken as he crossed into the United States on January 25, 2015 (the same day that "Conejo" transported drug proceeds to Mexico.

Agents concluded active investigation of this DTO during August 2015.   The U.S. Attorney's Office (USAO) and agents are currently preparing to present the investigation to a Federal Grand Jury seated in the District of New Mexico on or about October 14, 2015.   It is anticipated that Ledezma will be indicted for violation of Conspiracy 18 U.S.C. § 846 and International Money Laundering Title 18 U.S.C. § 1956(a)(2).   As such, agents are currently in the process of locating Ledezma and other subjects of investigation in preparation for arrests following the anticipated indictments.

On October 7, 2015, agents conducted physical surveillance at two locations known to be associated with Ledezma, one of which was the 1400 Rolling Rock address in Albuquerque, NM.   Ledezma was not located, and agents did not want to conduct any over actions prior to indictment as several subjects of this investigation have already fled to Mexico.   Agents have been careful not to cause the flight of any additional subjects to Mexico or cause any subjects who currently reside in Mexico and regularly travel to the United States to cease entering the United

8

States until indictments are issued and arrest warrants are obtained.

During the investigation, agents identified Ledezma's Facebook account.   On October 8, 2015, agents checked Ledezma's Facebook page and noted that the **TARGET TELEPHONE** remains listed on Ledezma's account as his phone number and photographs posted on the account indicate that Ledezma remains in the Albuquerque, NM area.   Based on this, agents believe that Ledezma remains in possession and utilizes the **TARGET TELEPHONE** and that the **TARGET TELEPHONE** is currently located within the District of New Mexico.

## AUTHORIZATION REQUEST

Based on the foregoing, I believe that the aforementioned investigation shows that Ledezma, along with others involved in this DTO, are responsible for the smuggling of large quantities of narcotics into the United States to Albuquerque, NM for further distribution and then the consolidation of bulk drug proceeds in Albuquerque, NM for subsequent transport back to Mexico.   Investigation has shown that the DTO utilizes couriers to assist with the distribution of narcotics through the United States and the transport of drug proceeds to Mexico.   I believe that Ledezma serves as one of these couriers and that probable cause exits for a Federal Grand Jury to indict Ledezma and other members of the DTO on federal charges on or about October 14, 2015. In order for agents to discretely locate Ledezma's current whereabouts and without Ledezma detecting law enforcement presence, I am requesting authorization to track the **TARGET TELEPHONE** in order for agents to 1) identify Ledezma's current residence and 2) maintain his whereabouts until he is placed under arrest by agents on or about October 16, 2015.

WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the

DEA and the FBI to obtain the Requested Information for a period of 45 days.

IT IS FURTHER REQUESTED that the Court direct Tracfone, Sprint Corporation, NEXTEL, Cellco Partnership dba Verizon Wireless, T-Mobile USA, Qwest Communications, Southwestern Bell, Alltell, LEACO Rural Telephone Co-op, Leap Wireless dba Cricket Wireless, MCI, Cingular Wireless, Plateau Wireless, SBC, Valor Telecommunications, Western Wireless, AT&T Wireless, Arch Wireless, and any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the Order (the "Service Providers") to assist agents of the DEA and the FBI by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct the Service Provider for the **TARGET TELEPHONE**, to initiate a signal to determine the location of the **TARGET TELEPHONE** on the Service Providers network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the **TARGET TELEPHONE**, for a period of 45 days.   Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA and/or the FBI.

IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

IT IS FURTHER REQUESTED that the warrant and this Affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature

disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the DEA and the FBI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and the Service Providers as necessary to effectuate the Courts Order.

IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof.

SHEA SHURLEY
Drug Enforcement Administration

SUBSCRIBED and SWORN to before
me this 7th day of October, 2015.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE